THE MICHIGAN LAND & IRON COMPANY, LIMITED (A CORPORATION), v. WILLIAM A. DOHERTY ET AL.

*Contract for sale of timber—Forfeiture—Equity practice.*

The principles enunciated in *Pendill v. Mining Co.*, 64 Mich. 172, are held to be applicable to this case; and a decree, declaring that the defendants were in default for not making the payments required by their contract for the purchase of certain timber of the complainant, and requiring such payment by a given date, in which case their rights under the contract should be in full force, but in default thereof forfeiting and annulling all of defendants' rights thereunder not already secured, and restraining their after assertion, except the right to cut and remove the timber already selected and

paid for under the terms of the contract, which right is
expressly maintained for their benefit, is held more favorable
to the defendants than they were entitled to, and is affirmed.

Appeal from Marquette. (Grant, J.) Argued October
25, 1889. Decided November 1, 1889.

Bill to enforce specific performance of a contract for
sale of pine timber. Defendants appeal from a decree
providing for forfeiture and annulment of contract with-
out foreclosure. Affirmed. The facts are stated in the
opinion.

*E. E. Osborn* (*B. J. Stevens,* of counsel), for complain-
ant.

*F. O. Clark* and *Fletcher & Wanty,* for defendants.

CHAMPLIN, J. In October, 1885, an agreement was
entered into between the Michigan Land & Iron Com-
pany, Limited, and William A. Doherty and George S.
Baars, for the sale of pine timber upon a tract of land
in Marquette county for $107,000, of which $26,750 was
paid down, and the balance was agreed to be paid in three
equal annual payments, with interest at 7 per cent. The
first of these three payments was duly made, but the
purchasers made default in the payment of the other two
payments and interest; and after the last payment became
due complainant filed a bill of complaint, in which it set
out the contract and the default of the defendants, and
prayed that the defendants, or some of them, be com-
pelled by the decree of said court to specifically perform
said agreement, and to pay the complainant the remain-
der of the purchase money, with interest due under said
agreement, on or before a certain day, to be fixed, and
offering to perform said agreement on its part, and in
default of such payment either that the said defendants,

and any and all of them, be decreed to have forfeited all rights under said agreement, and enjoined from making any further claim thereunder, or that the court order the sale of said pine timber upon said land in accordance with the practice of the court in sales ordered in suits for the foreclosure of mortgages, and for the payment of such of the moneys arising from such sale to complainant for the remainder of such purchase money, with interest and costs, and, should there be any amount left unpaid, then that the defendants, or some of them, be decreed to pay such deficit to complainant, and that it have execution therefor, and for general relief.

A subpœna was issued and served, with an underwriting as follows :

"A personal decree is sought against none of the defendants, and the bill is filed to reach interests in property, and not to obtain any further relief against the remainder of the defendants."

The defendants did not appear, and complainant's solicitor entered an order *pro confesso* and of reference, and proofs were taken of the payments made, and of the amount past due and unpaid.   On the coming in of the report the solicitor for complainant filed a paper purporting to be an affidavit of regularity, but it was undated and unsworn to.

The court entered a decree dated December 12, 1888, by which it was decreed that the defendants were in default for not making the payments required by the contract; that the defendants, or some of them, should pay to complainant $53,500, with interest at the rate of 7 per cent. from October 1, 1886, together with costs of suit, on or before March 31, 1889, in which case the rights of defendants under said contract should be in full force; but if defendants did not make such payment, as decreed, then, from and after March 31, 1889, the rights of defend-

ants to have or claim anything under and by virtue of such contract should be forever forfeited, annulled, and at an end, and the contract itself abolished, and they be forever restrained from asserting rights thereunder.

Notice of this decree was served upon the defendants, who petitioned the court to set aside the decree, and for a new decree to be entered, directing a sale as under mortgage foreclosures, in case payment is not made by a day fixed. The petition was based upon surprise, and upon irregularity in the proceedings, viz.: That when subpœna to answer was served upon them they examined the bill, and saw that it prayed for a sale in case the amount found due upon the contract was not paid at a certain time, to be fixed by the decree; that they had taken advice of counsel, and were advised that such was the practice in this State, and that a strict foreclosure in equity could not, under the decisions of the Supreme Court of this State, be had on a land contract, and when the copy of the decree was served upon them they were surprised that it did not provide for a sale of the timber; that the day fixed for a sale could not, under the statute, be earlier than October 2, 1889, as the bill of complaint was filed October 2, 1888; that no affidavit of regularity was filed; that they had paid $53,500 and accrued interest upon the contract, being one-half of the purchase price, and had cut and removed less than one-half of the pine timber that they were entitled to cut under the terms and conditions of the contract, and under the amount paid under the contract they have a very large equitable interest in the land, which should not be cut off and forfeited contrary to the provisions of law and rules of practice in this court.

It appears that another decree was entered, bearing date December 11, 1888, which modified the other decree in the following respects: It fixed the day of payment on

or before June 1, 1889, and, after decreeing the annulment of the contract in case default was made in such payment, it added these words:

"Save as to rights already secured by the defendants thereunder, and they, the said defendants, and each of them, and their attorneys, counselors, solicitors, and agents, forever restrained and enjoined from in any manner claiming or asserting any rights whatever thereunder, except the right to cut and remove the timber already selected and paid for thereunder, which right is expressly maintained for the benefit of the defendants, according to the terms of the contract."

It appears that this decree was filed in said cause on April 3, 1889, and the defendants appealed therefrom to this Court.

The agreement to sell the pine timber expressly reserved the title to the timber, and the product thereof, and declared it should remain in the Michigan Land & Iron Company, Limited, unless and until all paid for and removed as mentioned in the contract, and all pine timber and products thereof not removed by or before the time mentioned should continue to be and remain the property of the company. On making each payment and performing the other conditions of the agreement then required to be performed, the second party to the agreement was to have the right and be entitled to select, cut, and remove from the land a portion thereof, having pine thereon, bearing to the total quantity of pine upon all said lands the same ratio or proportion which such payment of principal bears to the total purchase price of said pine. Provision was made as to the manner of cutting and ascertaining the relative quantity of pine selected. The right of removal of timber which was selected and paid for was fixed at the first day of October, 1900. Time of performance by the parties of the second part of all the conditions and agreements by them to be per-

formed was declared to be of the very essence of the contract, and a condition precedent.

The complainant's counsel claim that the defendants never had possession of the half of the timber on the lands not paid for, and were not entitled to possession of such half of the timber; that, the time having passed when such payment should have been made, the contract, by force of its express terms, thereupon became and was null and void, and constitutes a cloud upon the complainant's title, and it seeks to quiet its title to premises and timber of which it is in possession; that the object is not to enforce a forfeiture, but to declare a forfeiture already legally affected, and prevent further claims on the part of the defendants; and they insist that this position is sustained by the case of *Pendill v. Mining Co.*, 64 Mich. 172 (31 N. W. Rep. 100), and say that the bill was drawn in reliance upon that case.

The principles of that case are applicable here. The agreement entered into was not a contract for the sale of lands, but of an interest in land, which required for its consummation a conversion of the things sold into personal property. The title passed only to such of the timber as had been fully paid for and selected under the agreement, and this right of property is fully protected by the decree appealed from. As to the timber not paid for, no title passed to the parties of the second part, and they have no equity of redemption in such timber. A bill to foreclose the equity of redemption would be improper where no such equity exists. It is not clear how the rights of the parties could be preserved by a sale of the timber under a decree of the court. If the timber should be offered in parcels, what rights would the purchasers acquire? They ought not to have any greater or better rights than the defendants had if the contract had remained in force. Such sale would not be made

under and by virtue of the contract, but independent of it. It would not be a sale by the parties, but by the court, and it is not for courts to make contracts for parties. Such sale would not be a sale of defendants' property to satisfy a debt due to complainant, but a sale of complainant's own property to satisfy a debt due to it.

The bill of complaint contains prayers for relief that are inconsistent and not suitable to the case made, but the defendants did not demur or answer, and complainant is entitled to such relief as the statements of the bill warrant. The main object of the bill is to remove an apparent cloud upon its title to the timber, and, under the underwriting to the subpœna to answer, it could not have taken a decree of sale and personal decree for deficiency.

We think the decree was more favorable to the defendants than they were entitled to, and that they have no just cause for complaint, and the decree will be affirmed, with costs.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred